## WRIGHTSMAN PETROLEUM CO. v. MARTIN.

No. 15598—Opinion Filed Sept. 15, 1925.

**1. Appeal and Error—Review—Sufficiency of Evidence in Law Case.**

Where the error complained of, in a law case, is insufficiency of evidence to sustain the judgment, this court will examine the record to determine the question raised, and, if there is any competent evidence reasonably tending to support the judgment, the same will not be disturbed by this court.

**2. Contracts—Damages for Breach—Exclusion of Evidence Where no Breach Shown.**

Where defendant pleads breach of contract, on the part of plaintiff, in his answer and cross-petition and prays for certain damages, by reason of said breach, and the evidence fails to show any breach of contract, as alleged, it is not error for the court to exclude testimony tending to show damages.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Okfuskee County; John L. Norman, Judge.

Action by G. N. Martin against Wrightsman Petroleum Company. Judgment for plaintiff, and defendant appeals. Affirmed.

O. S. Booth, for plaintiff in error.

Hummer & Foster and Phillips, Douglas & Duling, for defendant in error.

Opinion by THREADGILL, C. On December 26, 1922, G. N. Martin, defendant in error, as plaintiff, commenced this action against C. J. Wrightsman, Wrightsman Petroleum Company, and Minnetonka Lumber Company, as defendants, to recover $2,500 for building an oil and gas drilling rig and to foreclose the mechanic's lien on the leasehold. The cause was dismissed as to C. J. Wrightsman and the lumber company, and proceeded to trial against the petroleum company. The parties will be referred to as they appeared in the trial court.

The petition alleged, in substance, that the defendant employed the plaintiff by oral contract to furnish certain materials and perform certain labor for the construction of a "calf wheel rig 80-foot derrick and large house" on N.W.¼ of S.W.¼ of section 11. T. 10 N., R. 11 E., in Okfuskee county, upon which the defendant owned an oil and gas leasehold estate, and by the terms of said contract defendant agreed to pay plaintiff the sum of $2,500; that plaintiff furnished the materials and labor and constructed the rig as agreed upon, and the last labor performed was on June 8, 1922. The petition further pleads the lien statement and asks for judgment for $2,500, with interest at 6 per cent. per annum from June 8, 1922, the foreclosure of its lien, and $500 attorney's fees and costs. After various motions filed and overruled, not necessary to be stated here, defendant answered, in which it stated, in substance, that it made the contract with plaintiff to construct the drill-

ing rig through its president, C. J. Wrightsman; that the agreement was for a derrick 84 feet high, guaranteed to carry a hole 3,000 feet deep, and the legs to be 12x12, braces 2x10x12, girts 2x12, the 2x10's to be doubled all around, and other descriptions not necessary to be recited here, and upon the conditions that said rig and accessories should be completed within four days, and time was understood to be the essence of the contract, "occasioned on account of the offset well to said property draining ·the same, for' which defendant agreed to pay the sum of $2,500." The answer further states that plaintiff failed to comply with the terms of the contract, and then various defects are recited on account of which it is alleged the drilling contractor was delayed to June 13, 1922, in commencing the work of drilling, and during which time the Transcontinental Oil Company well was· draining the property of defendant, and, because of plaintiff's failure to comply with the said contract, the defendant asks that the action be dismissed. Then followed a' cross-petition pleading breach of contract and damages for expenditure of $200 to properly complete the drilling rig outfit, and damages for 13 days' drainage by the offsetting well in the sum of $3,000, and for all of which it prays judgment. Plaintiff filed his reply consisting of a general denial. The issues were tried to a jury February 6, 1924, and resulted in a judgment for plaintiff for the amount sued for, and foreclosure of the lien, and the defendant has appealed asking for a reversal and new trial.

1. The first proposition urged by defendant is that the evidence is not sufficient to reasonably support the verdict and judgment. The principal evidence introduced was the conversation between plaintiff and C. J. Wrightsman on May 26, 1922, in which the contract was made. According to the record plaintiff testified as follows:

"Q. Tell the jury what was said between you? A. He wanted me to build a rig and asked what I would build it for and told me to call him up in an hour or so and I did so. He told me he wanted to build an 80-foot derrick, standard length belt house, and outside forge house and casing rack. I called him up and told him I took the contract for the Transcontinental Oil Company for two rigs for $2,371. Q. You mean $2,371 each? A. Yes, sir, for each one, $2,371; and he wanted me to build this one for that and I told him I couldn't do that 'on account of the additional work. Q. What was the additional work? A. The outside forge house and an 80-foot derrick. Q. What were the other rigs? A. 72-foot derrick with a 22-foot bunting pole. Q. Did it have a forge house? A. No, sir, not

an outside forge house. Q. Did it have a casing rack? A. It did not. Q. What price did you make him for building this derrick? A. $2,500. Q. What did he say to that? A. He said go ahead and don't spare no time." .

He further testified to the two days it took to clear the place of trees and brush before he could commence building the derrick and said this was no part of his work under the contract, and he turned in a claim for it for $25, which was refused by the defendant, and he testified as to the work and materials in constructing the rig and equipment, and this testimony covered the issues as to the defects complained of by the defendant's answer, and the facts he stated tended to contradict the statement of facts as to defects and material and construction as set out in defendant's answer. He stated facts from which the jury could infer that he had fulfilled the contract as to the construction of the· drilling rig and as to the time in which he was to complete it.

Then C. J. Wrightsman gave his version of the telephone conversation and agreement as follows:

"Q. Are you familiar with the land on which the plaintiff erected a derrick in behalf of your company, and with reference to his contract for the same? A. I am. Q. State the circumstances, and what was said, if anything, between you and the plaintiff in reference to the construction of a derrick on said property about the time alleged in plaintiff's petition? A. I telephoned the plaintiff from my office at Tulsa, reaching him, I think, at Henryetta. The substance of that conversation was that I desired to erect a derrick on said land offsetting a producing well then just brought in by the Transcontinental Oil Company, and in my conversation ·stated that the element of time was extremely essential to protect my land from drainage which was resulting from said offset well. In the matter of compensation, he informed me that he had constructed derricks on the adjoining land for the Transcontinental Oil Company, and I then agreed verbally with him to pay him the same amount, with the express understanding that he was to receive a bonus of $200 additional to complete the derrick within four days as a rush job inducement for such quick action. As I recall, I instructed him to have the location made and to look after all details in the matter of getting upon the property."

The witness further testified that his office manager, R. J. Reinke, was present at his end of the telephone during the conversation, and heard what he said and made notes on the same at the time; then he

proceeded to tell that plaintiff failed to complete the derrick within the time agreed upon. Said he called him over the phone and vigorously protested against his failure, neglect, and delay in finishing the derrick; said the company had never changed the agreement or modified its terms; said he had offered to pay him the $2,500, amount of the contract agreed upon, less the bonus which he did not earn, because of failure to build the derrick within four days, and less certain repairs. He explained this was a compromise proposition, and, at the same time, he was complaining of the drainage and loss caused by the failure of plaintiff to complete the contract. On cross-examination he testified he did not remember the price agreed upon between him and plaintiff, "except it was to be the price the Transcontinental Oil Company charged him—the general price in the field—plus a bonus of $200 under special conditions previously mentioned." His best recollection was that the derrick was to be the same kind that was built for the Transcontinental Oil Company on adjoining ground. He could not say whether the rig was properly constructed, but was dependent upon the evidence of his manager, Kiester, and others to state the facts as they knew them.

The witness, R. J. Reinke, secretary of defendant, read his notes of the telephone conversation to corroborate the testimony of C. J. Wrightsman. Other witnesses testified as to the sort of derrick plaintiff constructed and the defects in the same. Upon the whole, the testimony was very conflicting as to the price to be paid. Plaintiff testified that the contract price for building two derricks for the Transcontinental Oil Company was $2,371 each, and they were 74 feet high, and that his price with the defendant for building one derrick 80 feet high was $2,500. He said it cost more to build an 80-foot derrick than a 74-foot derrick. Wrightsman, in his testimony, said they agreed that the derrick to be built was to be of the same character and the same price as that of the Transcontinental Oil Company derrick, with a bonus of $200, if done within four days. This would have made the price $2,571 instead of $2,500, as stated in defendant's answer; then the secretary, R. J. Reinke, testified that he heard Wrightsman say in the phone conversation, "Mr. Martin, so there will be no misunderstanding between us, is that the kind of derrick you have been building for $2,300? All right, I will pay you $2,300 for building that derrick and you take the responsibility for clearing the site and everything,

so that our men will not be delayed, and I will pay $200, and time is very essential in this contract." Then he said the time was four days.

There was no way of reconciling the conflict in this evidence, and the same is true of the conflict in the evidence as to the defects in the construction of the derrick and drilling equipments. To say the most of defendant's evidence, it does not show a contract subject to breach by failure to perform in four days, nor does it show that the contract was breached by such failure, but it only shows that plaintiff was not entitled to the $200 bonus. However, the jury had the witnesses before them and heard all of the evidence on the issues in the case, and they evidently believed the plaintiff's evidence and discredited the defendant's, and this was their province; and, under the well-known rule of this court, their verdict will not be disturbed, nor the judgment based on it set aside, since the same are reasonably supported by the evidence as shown by the record.

2. We pass defendant's second contention, as to error of the court in awarding attorney's fees without evidence, since the record shows that the case-made has been amended to show evidence upon which to base this part of the judgment, since defendant filed its brief raising the question, and no complaint is made that the evidence as amended is not sufficient.

We come to defendant's third contention, that the court committed error in refusing to allow it to introduce evidence of damages sustained by drainage from its lease through the offset well during the 16 days of its delay caused by plaintiff's failure to complete his contract within four days. We cannot agree with the contention. The error is based upon a breach of the contract, but we do not find any proof of a breach. Plaintiff testified that no definite time was fixed for completing the contract. The only thing said about time was: "He said to hurry it up and rush it along and not to spare any expense." He stated it took two days to clear the grounds, which he ordered, and which was done immediately after the contract was made on May 26, 1922, and in the meantime the materials were laid down by the lumber company, and he had from 5 to 11 men on the work all the time and without any delay, and that five men were a full force for building a drilling rig, and the work was finished on June 8, 1922. If the rule of reasonable time is applicable to the case, this evidence was sufficient to go

to the jury for them to determine whether or not the contract was completed within such time. But if we take C. J. Wrightsman's evidence, that the work was to be done for the same price as the rig of the offset well and the bonus of $200, if completed within four days, this would not show such a duty upon the part of the plaintiff to complete the contract within four days as would amount to a breach for not doing it, but only the loss of the bonus for such failure. The reasonable inference to be drawn from this evidence is that it was agreed that plaintiff should construct the drilling outfit as quickly as possible without delay, and if he would make an extraordinary effort to do the work and complete the contract within four days, he should be rewarded with a bonus of $200, otherwise only $2,300. So if the jury had adopted the defendant's theory, it would only have saved it the $200 bonus, and the contract otherwise would have been satisfied, and no damages could have been awarded for failure of the bonus agreement, since the terms and duty of the general contract were not affected by it. But the jury's verdict settles the question in favor of the plaintiff, and, according to this contention and the evidence tending to support it, there was no breach of the contract, and therefore, no liability for damages.

We are of the opinion that the judgment of the trial court should be affirmed.

Plaintiff has called attention to the supersedeas bond given by defendant in the case, and now asks for judgment on the same. The bond is in the sum of $6,000, and recites the judgment, and is in proper form and signed by defendant, Wrightsman Petroleum Company, as principal, and United States Fidelity & Guaranty Company of Baltimore, Md., as surety, Under section 797, Comp. St. 1921, plaintiff (defendant in error) is entitled to judgment against the surety on said bond. It is, therefore, adjudged, ordered and decreed that plaintiff have and recover of and from the United States Fidelity & Guaranty Company of Baltimore, Md., as surety on said bond in this case. dated February 21, 1924, the sum of $2,500, with interest thereon at the rate of six per cent. per annum from June 8, 1922, until paid, and the sum of $412.50 as attorney's fees, and all costs, being the sums provided for in said judgment and bond. For which let execution issue as by law provided.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 854, § 2834. (2) 13 C. J. p. 774, § 974 (Anno).